# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

RICARDO RANGEL, JR.
FRANCISCO MARTINEZ

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

**CRIMINAL COMPLAINT**

CASE NUMBER: 06 CR 0702

FILED
SEP 27 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

I, TODD GREENWAY, being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __September 26, 2006__ in __Cook__ county, in the __Northern__ District of __Illinois__ defendant(s) did,

conspire with each other and others knowingly and intentionally to possess with the intent to distribute and to distribute a controlled substance, namely, in excess of 500 grams of cocaine, a Schedule II Narcotic Drug Controlled substance, in violation of Title 21 U.S.C. § 841(a)(1)

in violation of Title __21__ United States Code, Section(s) __846__.

I further state that I am a(n) Special Agent with the Drug Enforcement Administration and that this complaint is
_Official Title_
based on the following facts:

    See attached affidavit.

Continued on the attached sheet and made a part hereof: __X__ Yes  ____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

__September 27, 2006__ at __Chicago, Illinois__
Date                                      City and State

GERALDINE SOAT BROWN, U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer

_Geraldine Soat Brown_
Signature of Judicial Officer

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

## AFFIDAVIT

I, Todd Greenway, being duly sworn under oath, state as follows:

1. I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration ("DEA"), and have been employed as such for over two years. In my capacity as a DEA Special Agent, I am assigned to investigate violations of federal law, including narcotics violations.

2. I make this affidavit from personal knowledge based upon my participation in this investigation, reports I have read related to this investigation, and conversations I have had with others who have knowledge of the events and circumstances described herein. The information in this affidavit is provided for the limited purpose of establishing probable cause in support of the complaint in this case. It does not include all of the information that I have acquired during this investigation.

3. On September 18, 2006, a Confidential Source (hereinafter "CS") contacted DEA Special Agent Kestutis Jodwalis ("SA Jodwalis") and stated that CS had communicated with Francisco Martinez ("Martinez"), whom he knew from previous employment as "Frank", via CS's cellular telephone. The CS is a defendant in a pending criminal proceeding, who had previously purchased cocaine from Martinez. The CS told SA Jodwalis that Martinez wanted to provide the CS with small amount of cocaine, which the CS understood to be a sample of larger quantities of cocaine that Martinez could provide. SA Jodwalis instructed the CS to arrange a meeting with Martinez for September 19, 2006.

4. On September 19, 2006, the CS contacted SA Jodwalis and the CS stated that he scheduled a meeting with Martinez for later that same day. The CS stated that the meeting was set to take place at 4700 S. Kedzie Avenue in Chicago, Illinois.

5. On September 19, 2006, SA Jodwalis and I met with the CS at a pre-determined location in Chicago, Illinois to further interview the CS prior to the scheduled meeting with Martinez. Following that interview, I searched the CS and his vehicle for illegal contraband with negative results. The CS was then fitted with a recorder and transmitting device.

6. DEA agents then followed the CS to the parking lot located at 4700 S. Kedzie Street, Chicago, Illinois. Once at the parking lot, the CS was observed meeting with Martinez within the parking lot. After meeting with Martinez, the CS met with DEA agents and the CS stated that Martinez provided the CS with 3.2 grams of cocaine. The CS provided the cocaine given to him by Martinez to DEA agents. The cocaine field tested positive.

7. Martinez contacted the CS via cellular phone later on September 19, 2006 and told the CS that Martinez had two half kilograms of cocaine for sale. The CS stated that Martinez offered to sell the two half kilograms to the CS for $20,000. The CS, as instructed by DEA agents, contacted Martinez and the CS declined to purchase the two-halves. The CS told Martinez that he was interested in purchasing two kilograms of cocaine.

8. Subsequently, on September 25, 2006, the CS contacted SA Jodwalis and the CS stated that Martinez contacted him on September 23, 2006 and Martinez told the CS that he had two kilograms of cocaine for sale at $19,000 per kilogram. The CS, as instructed by SA Jodwalis, told Martinez that "his friend" was not ready and that he would contact him later.

2

9. On September 26, 2006, SA Jodwalis and Task Force Officer Ron Ryan met with the CS and placed two recorded telephone calls to Martinez. During these telephone calls, the CS arranged with Martinez for the purchase of two kilograms of cocaine. During those same telephone calls, Martinez agreed to meet the CS within the Jewel Osco parking lot located at 6057 S. Western Avenue in Chicago, Illinois. Martinez also told the CS that he would be driving a red Astro van on the day of the exchange.

10. On September 26, 2006, SA Jodwalis and I met with the CS at which time he and his vehicle were searched for illegal contraband with negative results. The CS was also fitted with a recording and transmitting device.

11. At approximately 4:39 PM on September 26, 2006, agents established surveillance in the vicinity of 6057 S. Western Avenue and observed a red Astro van parked in the parking lot of the Jewel Osco grocery store. Shortly thereafter, the CS placed a recorded telephone call to Martinez and the CS told Martinez that he would arrive at the parking lot in ten minutes. During this same conversation, Martinez informed the CS that he had the cocaine.

12. Shortly before 5:00 PM that same day, the CS drove into the parking lot, followed by SA Jodwalis in a separate vehicle. The CS parked in the parking near the red Astro van. Shortly thereafter, Martinez was then observed by Task for Officer Sowinski entering the CS's vehicle at the front passenger side door. The CS stated that once Martinez entered the CS's vehicle, Martinez made a telephone call on his cellular phone.

13. Shortly thereafter, SA Jodwalis observed Ricardo Rangel, Jr. ("Rangel"), driving a Pontiac Grand Prix, park near the CS's vehicle. Shortly thereafter, SA Jodwalis observed Martinez exit the CS's vehicle and meet with Rangel at Rangel's vehicle. SA Jodwalis then observed Rangel hand Martinez a paper bag which Martinez carried into the CS's vehicle.

14. Shortly after Martinez reentered the CS's vehicle, the CS signaled for agents to initiate the arrest of Martinez. The CS was instructed by DEA agents to provide this predetermined signal upon viewing the delivery of cocaine from Martinez. The driver of the Pontiac Grand Prix, Ricardo Rangel Jr., was also placed under arrest by agents.

15. Approximately two kilograms cocaine were recovered from the CS's vehicle. The two kilograms were concealed in a bag of charcoal. The size of the charcoal bag recovered was consistent with the bag seen earlier by SA Jodwalis The cocaine field tested positive for the presence of cocaine, a Schedule II Narcotic Drug Controlled Substance. After the DEA agents removed the two kilograms concealed in the charcoal bag from the CS's vehicle, I searched the CS and the CS's vehicle for additional illegal contraband with negative results.

16. Rangel was read his *Miranda* rights by Task Force Officer Sowinski following his arrest. Rangel waived his rights and agreed to speak with DEA agents. Rangel stated that he had known Martinez since he was thirteen years old. Rangel stated that approximately two weeks previous, he met with Martinez at Martinez's residence at which time Martinez asked Rangel if he was interested in making some money by delivering some things to his associates. Rangel stated that he knew Martinez was talking about delivering cocaine. At that same time, Rangel stated that Martinez and Rangel exchanged cellular telephone numbers.

17. Rangel stated Martinez called him on September 26, 2006 and instructed him to meet one of his associates at Archer Street and Pulaski Street in Chicago, Illinois. Rangel stated further that he agreed and met with an unidentified Hispanic male who handed him a bag of charcoal which he put in the trunk of his vehicle. Rangel further stated that he then traveled to the Jewel Osco parking lot at 60th Street and Western Avenue and handed the bag of charcoal to Martinez. Rangel stated that he waited in the parking lot because Martinez was going to pay him

$500 for each kilogram of cocaine he delivered. Rangel stated that shortly thereafter he was arrested by the police.

FURTHER AFFIANT SAYETH NOT

_____
Todd Greenway
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO BEFORE ME
this 27th day of September, 2006.

_____
Geraldine Soat Brown
United States Magistrate Judge